OPINION OF THE COURT
John G. Connor, J.
This is a CPLR article 78 proceeding. The heart of the issue before the court is the construction to be given that section of the Tax Law (as it was in effect for the years 1974, 1975 and 1976), dealing with the computation by a domestic banking corporation of the “alternative minimum tax base,” to be used in determining its franchise tax liability. (Tax Law, § 1455.) The statute in pertinent part provides for the imposition of a minimum tax not less than an amount equal to “two per cent of the interest or dividends credited by it to depositors or shareholders during the taxable year, provided that, in determining such amount, each interest or dividend credit to a depositor or shareholder shall be deemed to be the interest or dividend *772 actually credited or the interest or dividend which would have been credited if it had been computed and credited at the rate of three and one-half per cent per annum, whichever is less” (Tax Law, § 1455, subd [b], par [2]; emphasis added).
In 1974 petitioner paid New York State banking corporation franchise taxes totaling $722,561.97; in 1975 it paid $960,520.13; in 1976 it paid $1,038,558.91. In each case the tax payment was computed by petitioner ostensibly in accordance with the preceding subsection. By notices dated June 9, 1978, the Audit Division of the Department of Taxation and Finance advised petitioner of alleged deficiencies in its franchise tax payments for these three years in the total amount of $94,504.58, plus interest. At petitioner’s instance a formal administrative hearing concerning the alleged deficiencies was held on May 21, 1981. At the hearing the issues concerned the proper application of the above subdivision to petitioner’s actual accounts.
THE BANK’S METHOD
The method utilized by petitioner each year consisted of the following steps:
First, petitioner totaled the amount of interest and dividends credited that year, exclusive of interest credits forfeited by depositors as penalties for early withdrawals of time deposits.
Second, the rate at which petitioner claimed this interest was credited was computed by dividing this total by the year’s average daily deposit liability, exclusive of interest added and accrued to the various accounts during the year. The quotient is claimed by petitioner to represent the “actual” rate of interest paid on its accounts. In 1974 this rate was 5.8684%; in 1975 it was 6.032%; in 1976 it was 6.154%.
Third, to compute its tax base, petitioner first claims to have computed, for those accounts at which interest was credited at rates above 3.5% per annum, the amount of interest that would have been credited at the statute’s ceiling rate of 3.5% per annum. To make this computation, petitioner multiplied the interest earned by depositors that year by a fraction, the numerator of which was the tax *773 statute’s ceiling rate of 3.5%, and the denominator of which was petitioner’s “actual” interest rate. The product of this multiplication is the amount petitioner claims to equal the amount of interest that would have been credited at the rate of 3.5% per annum.
Fourth, to this product petitioner added the small amount of interest actually credited to accounts earning less than the statutory ceiling of 3.5%. The final total was the tax base upon which petitioner computed its yearly liability for the alternative minimum tax.
THE AUDIT DIVISION’S METHOD
The Audit Division of the State Department of Taxation and Finance based its notices of deficiencies on a set of computations using a different method of computing petitioner’s tax base for the years at issue. The difference consisted in using as the denominator of the fractional multiplier (applied to accounts earning more than 3.5% interest), the “stated” or nominal rates at which petitioner advertised interest could be paid, instead of the “actual” rate as computed by petitioner. A different fractional multiplier was thus applied to each class of account having a distinct earning rate and compounding method. This difference in methods had as one effect the inclusion in the tax base of an amount approximating the interest accrued and credited to the petitioner’s accounts during the course of the tax year. In other words, the audit division’s method sought to include in its computation of petitioner’s tax base the effects of its compounding and crediting practices.
THE DECISION OF THE TAX COMMISSION
The decision of the hearing officer, rendered April 1, 1982, held that petitioner’s compounding and crediting practices should properly be reflected in the computation of petitioner’s tax liability. Further, the decision held that petitioner improperly netted penalties forfeited upon premature withdrawal of time deposits in computing its conversion factor. To implement these decisions the hearing officer set forth a third method of computation (significantly more complex), and directed the audit division to recompute petitioner’s tax liability according to this formula. The audit division has made new computations, *774 whether in accordance with the hearing officer’s formula or not, this court does not determine. The audit division now computes that the alleged deficiencies for three years would total $61,504.52.
THE PETITION
The petition seeks a judgment annulling the decision of the hearing officer and canceling the undertaking filed by the petitioner, or, in the alternative, transferring this proceeding to the Appellate Division, Third Department, pursuant to CPLR 7804 (subd [g]). Because the issues before the court deal purely with the proper construction and application of the tax statute, there is no issue of substantial evidence presented, and transfer is unnecessary.
We deal with a statute which on its face demands resolution of a hypothetical question. The amount of interest deemed to have been paid to depositors is stated to be “the interest or dividend actually credited or the interest or dividend which would have been credited if it had been computed and credited at the rate of three and one-half per cent per annum, whichever is less”.
Since most accounts earn interest at a rate in excess of 3.5%, in most cases a taxpayer must apply the hypothetical part of the statute to determine how much interest would have been credited under the statutory formula. While the statutory language is barren of guidance as to the mechanics of this computation, it is clear that it is equally barren of such terms as “stated rate,” “actual rate,” “provisionally credited interest,” and “interest forfeited due to penalties for early withdrawal.” Generally, compound interest is not favored by the courts, and under the laws of contract, in the absence of an express agreement therefor, it is not recoverable. (Young v Hill, 67 NY 162; Sonn View Dev. Corp. v Xnorb Realty Corp., 254 App Div 319.) The language employed by the Legislature, therefore, clearly calls for the computation of simple interest at the rate of 3.5% per year, credited annually.
The more difficult feat of construction consists in determining the hypothetical principal to which the ceiling rate of 3.5% is to be applied. Since this rate is taken by the court *775 to mean a simple annual rate, it is most reasonable to conclude that the base for computation must be that on which simple 3.5% interest would be computed, were that the basis of the contract between the bank and its depositors. It then follows that the principal must consist solely of the amount of deposits furnished by depositors during the year, figured without regard to actual interest payments computed and accrued by the bank, since the latter owe their existence solely to the actual (and irrelevant) contract between the bank and its customers. A fortiori, the principal must also exclude interest payments which were actually earned and subsequently forfeited due to a premature withdrawal by the depositor. (Since interest payments are not to be included in the fictitious amount on deposit upon which the hypothetical 3.5% interest is to be computed, it can make no difference to the computation whether they are ever permanently credited to the account or not.)
Without criticism of either party’s diligent efforts to discern the true meaning of the taxing statute, the court welcomes this opportunity to inject, by way of statutory construction, a modicum of simplicity into a field presently rife with laborious and detailed calculations which do little to advance the just and fair administration of the tax laws. With due consideration for the three formulae which have been advanced as being the correct method of computation, there is in this court’s view as a matter of law but one reasonable method for computation of petitioner’s tax liability under this statute, and that method follows:
(1) Compute the average daily deposit liability for the tax year in all accounts which earned at a rate greater than 3.5%, without regard to interest actually earned, paid, accrued or forfeited in these accounts.
(2) Multiply this amount by 3.5%. The result is the tax base for purposes of computation of the alternative minimum tax.
The decision of the hearing officer issued April 1,1982 is hereby annulled as being erroneous as a matter of law, and the matter is remitted for recomputation of petitioner’s tax *776 liability for the years at issue in accordance with this decision.